UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PRISUA ENGINEERING CORP., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; and SAMSUNG ELECTRONICS LATINOAMERICA MIAMI, INC., <br><br> Defendants. | Civil Action No. 1-16-CV-21761-KMM |

**PLAINTIFF PRISUA ENGINGEERING CORP.'S MOTION FOR
<u>ENHANCED DAMAGES PURSUANT TO 35 U.S.C. § 284</u>**

Plaintiff Prisua Engineering Corp. ("Prisua" or "Plaintiff") hereby moves for an award of enhanced damages pursuant to 35 U.S.C. § 284 and the February 23, 2018 jury verdict finding that defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Electronics Latinoamerica Miami, Inc. (collectively, "Samsung") willfully infringed the patent-in-suit (the "'591 Patent").

### I. PROCEDURAL BACKGROUND

A jury trial was held in this case from February 20 to 23, 2018. The eight-member jury unanimously found infringement of the '591 Patent by Samsung and further found that the infringement was willful. (ECF No. 325.) The jury awarded Prisua $4.3 million as a reasonable royalty. (*Id.*) Determination of enhanced damages for the willful nature of the infringement found by the jury remains for the Court.

### II. LEGAL STANDARD

Damage awards in patent cases are governed by 35 U.S.C. § 284, which provides that upon

a finding for a claimant, "the court may increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284. As the Supreme Court recently stated in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016), the enactment of § 284 in the 1952 revision of the Patent Act has been described by the Court — "consistent with the history of enhanced damages under the Patent Act — as providing that 'punitive or increased damages' could be recovered 'in a case of willful or bad-faith infringement.'" *Id*. at 1930 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 508 (1964)). *See also Dowling v. United States*, 473 U.S. 207, 227 n.19 (1985) (explaining that Congress provided for enforcement of patent rights by civil remedies including "treble damages for willful infringement" rather than by criminal provisions).

Determining whether to award enhanced damages under § 284 is a two-step process: first, the jury decides willfulness; then, if the jury finds willfulness, the district court decides whether and how much to enhance the damage award. *See Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996) ("[W]e have interpreted the increased damages part of section 284 as requiring a two step process. First, the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based. If so, the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances." (citation omitted)).

"An enhancement of damages often follows a finding of willful infringement." *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 198 F. Supp. 3d 1343, 1349 (S.D. Fla. 2016) (awarding treble damages), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017). Following a jury finding of willfulness, the Court has wide discretion in deciding how much to award in enhanced damages. *Halo*, 136 S. Ct. at 1933 ("Section 284 gives district courts discretion in meting out enhanced damages. It 'commits the determination' whether enhanced damages are appropriate 'to the

discretion of the district court' and 'that decision is to be reviewed on appeal for abuse of discretion.'" (quoting *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744, 1747 (2014)). The discretion to award enhanced damages should be exercised in "egregious cases typified by willful misconduct," *id.* at 1934, rather than "garden-variety" cases, *id.* at 1935, but ultimately, "[s]ection 284 allows district courts to punish the full range of culpable behavior," *id.* at 1933. Notably, the Supreme Court in *Halo* rejected the Federal Circuit's requirement that a defendant's conduct be objectively reckless or baseless for an award of enhanced damages under § 284. *Id.* ("The subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to whether his infringement was objectively reckless."). A defendant therefore cannot escape enhanced damages just because its litigation position was not frivolous.

"The wide range of enhancement that is provided by statute, up to threefold, permits the trial court to reflect the interest of justice in adjusting the damages appropriate to the culpability of the acts of infringement." *Nat'l Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1193 (Fed. Cir. 1996). In keeping with the wide statutory range of "up to three times" the damages, district courts have exercised their discretion to award a wide variety of enhancements. Many have awarded the full treble damages. *See, e.g.*, *Arctic Cat Inc. v. Bombardier Recreational Prods., Inc.*, 876 F.3d 1350, 1371-72 (Fed. Cir. 2017) (affirming award of treble damages); *Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1364-65 (Fed. Cir. 1998) (same); *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 184 (Fed. Cir. 1994) (same); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 764 (E.D. Tex. 2016) (awarding treble damages); *Acticon Techs. v. Heisei Elecs. Co.*, No. 06-cv-4316 (KMK), 2008 WL 356872, at *3 (S.D.N.Y. Feb. 5, 2008) (awarding treble damages where, "[a]fter being placed on notice of their

infringing conduct, the Defendants continued their improper activities and have offered no proof that 'a prudent person would have had sound reason to believe that the patent was not infringed or was invalid or unenforceable'" (quoting *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997))).

Others have rendered awards in the 2x-3x range. *See, e.g.*, *nCube Corp. v. Seachange Int'l, Inc.*, 436 F.3d 1317, 1319 (Fed. Cir. 2006) (affirming award of double damages); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1370-71 (Fed. Cir. 2004) (same); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 254 F. Supp. 3d 680, 723-24 (D. Del. 2017) (awarding double damages); *Polara Eng'g, Inc. v. Campbell Co.*, 237 F. Supp. 3d 956, 994 (C.D. Cal. 2017) (awarding 2.5x damages); *Mueller Sports Med., Inc. v. Sportstar Athletics, Inc.*, No. 04-C-0700-C, 2005 WL 3149550, at *2 (W.D. Wis. Nov. 2, 2005) (awarding double damages).

And still others have rendered awards in the 1x-2x range. *See, e.g.*, *Georgetown Rail Equip. Co. v. Holland, L.P.* 867 F.3d 1229, 1244 (Fed. Cir. 2017) (affirming award of 1.65x damages); *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1342 (Fed. Cir. 2016) (affirming award of 1.5x damages); *Cobalt Boats, LLC v. Brunswick Corp.*, --- F. Supp. 3d ---, No. 2:15cv21, 2017 WL 4938230, at *7 (E.D. Va. Oct. 31, 2017) (awarding 1.5x damages); *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1036 (N.D. Cal. 2016) (awarding 1.3x damages).

There is no fixed list of considerations to take into account; rather, the "totality of the circumstances" is to be considered. *Jurgens*, 80 F.3d at 1570; *see also Halo*, 136 S. Ct. at 1932 ("As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case . . . ."). Nevertheless, there are guideposts. The Federal Circuit in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992), reviewed the body of decisions under § 284 and compiled a nonexclusive list of the factors that may prove relevant in any given case.

Courts continue to refer to those factors at least as a starting point for analysis. *See Georgetown Rail*, 867 F.3d at 1244 ("When deciding how much to award in enhanced damages, district courts often apply the non-exclusive factors articulated in [*Read*]."). The *Read* factors include (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal the misconduct. *See Read*, 970 F.2d at 827. Consideration or discussion of these nine factors, however, is not mandatory. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017).

The determination of enhanced damages is governed by a preponderance of the evidence standard and is subject to review only for abuse of discretion. *Halo*, 136 S. Ct. at 1934.

**III.   ARGUMENT**

The jury in this case found that Samsung's infringement of the '591 Patent was willful. Determination of enhanced damages under § 284 remains for the Court. For the following reasons, the Court should award enhanced damages by at least doubling the jury's award.

**A. The Totality of Circumstances Warrants Enhancement of the Jury's Reasonable Royalty Award**

The jury's finding of willfulness shifts the focus to the Court for a determination of the enhancement under § 284, taking into account all relevant considerations, including any relevant *Read* factors. An enhancement of the jury's reasonable royalty award is warranted.

### 1. Samsung Received Notice of the '591 Patent and Continued Infringing

Receiving notice of a patent and continuing to infringe is perhaps the most obvious kind of willful behavior bearing on the § 284 analysis. In the present case, the undisputed evidence shows that Samsung received notice of Prisua's patent in August 2014, in the form of a letter from Prisua's counsel, accompanied by a copy of the '591 Patent and a detailed claim chart mapping the accused devices to the '591 Patent. (ECF No. 1-6.) Samsung thus received notice not only of the patent itself, but also of the nature of the alleged infringement. Yet Samsung continued infringing unabated.[1] The importance of this threshold fact, of continued infringement after receipt of actual notice, cannot be underestimated. *See WBIP*, 829 F.3d at 1342 (affirming enhancement of damages where "[t]he jury had record evidence upon which it could have inferred that [defendant] had knowledge of the patents at issue, and thus its finding [of willfulness] is supported by substantial evidence").

### 2. Samsung Delayed Sixteen Months Before Responding to Prisua's Notice

Samsung did not respond to Prisua's August 2014 notice until December 2015 – a prolonged period of sixteen (16) months. Samsung's corporate representative admitted at trial that Prisua's counsel had inquired numerous times about the status of the matter throughout the sixteen-month period. (ECF No. 310 at 32.) Samsung thus knowingly gave Prisua the brush-off for a protracted period of time, infringing all the while.[2] Such excessive delay in responding to Prisua's

---

[1] Samsung may still be infringing. Its own damages expert, Mr. Richard Lettiere, testified that Samsung was still running off low quantities of "older models that are still capable of using Best Face" (ECF No. 310 at 206), and he took those sales into consideration in arriving at his opinion on a reasonable royalty. Apparently, Samsung not only took no remedial action but may still be infringing today, nearly four years after receiving Prisua's notice.

[2] Counsel for Samsung contended in closing arguments that Prisua was free to sue Samsung at any point during those sixteen months (ECF No. 319 at 67), as if a small entity like Prisua has no reason to hesitate before suing the world's largest electronics company.

infringement warning letter is indicative of Samsung's dismissive attitude towards Prisua and its patent rights.

### 3. Samsung Has Presented No Evidence That It Formed a Good-Faith Belief of Non-Infringement After Receiving Notice from Prisua

When Samsung finally responded in December 2015 to Prisua's August 2014 notice, the response was an utterly dismissive one-liner delivered by e-mail, stating in conclusory fashion Samsung's conclusion that its "products do NOT practice the technology claimed by '591 patent [sic]." (ECF No. 289-1.)  The e-mail was completely devoid of any analysis responsive to the notice letter and detailed claim chart from Prisua's counsel.  Nor did Samsung follow up its flimsy e-mail with a more detailed explanation at a later date.  To this day, Samsung has presented no evidence whatsoever that, at the time, it formed a good-faith belief of non-infringement after receiving Prisua's notice.  In a patent case litigated all the way through trial and verdict, the record contains nothing but the utterly dismissive one-liner delivered after sixteen months.  It is the essence of bad faith.

### 4. Samsung's Litigation Conduct Was Vexatious, Incalcitrant and Unscrupulous

The record of this case is littered with evidence of egregious litigation conduct by Samsung. Early in the litigation, having delayed sixteen months before responding to Prisua's infringement notice with a one-line dismissal containing absolutely no reasoning, Samsung threatened to seek attorney's fees from Prisua if the case were not abandoned.  (Ex. A hereto (a true and correct copy of letter from Samsung's counsel dated 2/20/17).)  In other words, Samsung pledged to bankrupt Prisua for having the impudence to bring suit.

It went downhill from there.  Over the course of the litigation, Samsung's headstrong and self-righteous litigation behavior was designed to waste the resources of its much smaller opponent, but Samsung's strategy met with little success.  Samsung brought motion after motion

7

and prevailed on virtually none of them. Samsung moved to dismiss on the hopeless theory that the '591 Patent did not even concern patentable subject matter under 35 U.S.C. § 101. (ECF No. 22.) Prisua was forced to respond (ECF No. 28), and the Court denied that motion (ECF No. 56). Samsung repeatedly moved for a stay of the litigation pending Patent Office proceedings, even after those proceedings no longer concerned the claims in suit. (ECF Nos. 62 and 139.) Prisua was forced to respond (ECF Nos. 66 and 141), and the Court denied those motions (ECF Nos. 81 and 229). Samsung moved for summary judgment (ECF No. 153), Prisua was forced to respond (ECF No. 186), and the motion was denied (ECF No. 275). Samsung moved to strike the declarations of Prisua's experts submitted in opposition to summary judgment. (ECF No. 199.) Prisua was forced to respond (ECF No. 214), and the Court denied the motion (ECF No. 268 at 27). Samsung also moved to strike the errata sheet submitted by one of Prisua's experts following his deposition (ECF No. 221), a motion that substantially regurgitated the arguments made in the motion to strike the declarations submitted in opposition to summary judgment. Prisua was forced to respond (ECF No. 243), and the Court denied the motion (ECF No. 268 at 28). While the motion to strike the errata sheet was pending, Samsung submitted a purported notice of supplemental authority that cited not any supplemental authority but one of the Court's own orders, which obviously did not need to be brought to the Court's attention. (ECF No. 234.) The filing was a transparent attempt at further briefing of motions already fully submitted. After Prisua was yet again forced to respond (ECF No. 236), Samsung, with remarkable chutzpah, then took for itself the liberty of filing a reply in further support of the bogus notice of supplemental authority, as if such notices are motions permitting replies. (ECF No. 248.) The Court struck the notice as improper. (ECF No. 268 at 29-30.) In the *SRI* case cited above, enhanced damages were awarded to a plaintiff who bore the brunt of similar litigation conduct. *SRI*, 254 F. Supp. 3d at 723 ("Cisco's

8

litigation strategies in the case at bar created a substantial amount of work for both SRI and the court, much of which work was needlessly repetitive or irrelevant or frivolous." (footnotes omitted)).

In one of the few instances in which the Court at least partially granted a motion filed by Samsung in the case, Samsung moved in limine to bar Prisua from referring at trial to the fact that Samsung is from Korea. (ECF No. 156 at 12-13.) And yet at trial, Samsung itself proudly celebrated its Korean nationality, talked about the Winter Olympics going on in Korea, and emphasized the sacrifice that their corporate representative had supposedly made in traveling all the way from Korea to appear as a witness. (ECF No. 310 at 22-24, 30; ECF No. 319 at 51, 66-67.) Samsung thus disregarded its own motion in limine, revealing the motion to have been filed in bad faith and to have wasted Prisua's and the Court's time.

In another abusive stratagem, Samsung identified numerous invalidity and infringement grounds in the pretrial stipulation that were then never advanced at trial, forcing counsel for Prisua to devote trial-preparation resources to the rebuttal of phantom defenses. Specifically, Samsung identified the iSwap Faces app, in combination with the Apple iPhone, as the number one piece of prior art for invalidity (ECF No. 232 at 23), and then made no mention of it at trial. Likewise, Samsung identified the Cohen and Russak references (ECF No. 23-25), yet made no mention of them at trial. Such sandbagging of plaintiffs' counsel with extra prior art is a known artifice among patent defense counsel, and while it may unjustly help win cases, it also supports enhanced damages when the plaintiff prevails. Again, the same abusive conduct was held to warrant enhancement in the *SRI* case. *SRI*, 254 F. Supp. 3d at 722 (stating that defendant "crossed the line" by maintaining numerous invalidity theories until trial and then relying on only two).

Similarly, Samsung listed seventeen contested issues on infringement up to the eve of trial

9

(ECF No. 232 at 21-22), but then actually argued only three at trial (numbers 1-3 in the pretrial stipulation, *see id.* at 21). In this regard, Samsung's conduct is even worse than that of the defendant in *SRI*, who at least did not compound the identification of superfluous prior art references with the identification of superfluous non-infringement theories.

Furthermore, Samsung's conduct was sufficiently odious to draw rebukes from the Court on more than one occasion. In denying summary judgment, the Court admonished Samsung for misrepresenting legal authority. (ECF No. 275 at 14 n.8.) After explaining the correct understanding of the authority in question, the Court reminded that "[c]areful parsing is critical . . . as is careful reading." (*Id.*) And in striking Samsung's bogus notice of supplemental authority, the Court again admonished Samsung for its tactics:

> Aside from the procedural impropriety of filing the Notice, the Court questions Samsung's motives for its filing. It is not unheard of for a party or its counsel to attempt that second bite at the apple. But it is worrisome that counsel would engage in a full round of briefing, wasting not only its own time but its client's resources, on filing a Notice informing the Court of its own ruling.

(ECF No. 268 at 29 n.10.)

To cap off its ignoble course of conduct, Samsung steadfastly refused, on grounds of attorney-client privilege and work-product protection, to produce any communications reflecting its internal review of Prisua's infringement notice. In response to an interrogatory seeking "any investigation, evaluation or analysis conducted to determine whether any product . . . would infringe any claim of the '591 patent" (ECF No. 281, Ex. A (filed under seal) at 3), Samsung responded that it was "not aware of <u>any</u> non-privileged information responsive to this interrogatory" (*id.* at 4 (emphasis added)). Accordingly, Samsung served a privilege log (ECF No. 281, Ex. B (filed under seal)) listing hundreds of documents dating from September 2014 to October 2015, the period between receipt of Prisua's notice of infringement in August 2014 and

Samsung's dismissive e-mail in December 2015. Based on these assertions of privilege by Samsung, Prisua was denied the opportunity to use Samsung's internal records to bolster Prisua's case for willfulness. At trial, however, Samsung turned that shield into a sword, as its corporate representative, Mr. Daejin Jeon ("Mr. Jeon") testified that Samsung had conducted a "very thorough review" (ECF No. 310 at 38) during the sixteen-month period.

The abusive use of privilege as sword and shield is all the more egregious because Prisua had filed a motion, the day before trial, to prevent precisely such testimony. (ECF No. 281.) Counsel for Prisua followed up that motion by raising the issue in a sidebar conference immediately preceding Mr. Jeon's testimony. (ECF No. 310 at 16-17.) Even Samsung's counsel agreed it would be inappropriate for Mr. Jeon to testify on the content of the review, and assured the Court that was not the plan:

> MR. EDLIN: If you -- I did my examination of him with care. I said, "What do you do? What is the I.P. center do that you work at?"
>
> "We do these reviews"
>
> THE COURT: How long did it take to do the review?
>
> MR. EDLIN: All I had him do was read the letter. ***I didn't say did you do that in this case.*** He didn't even do that.

(*Id.* at 36-37 (emphasis added).) Yet moments later, Mr. Jeon did that very thing, going beyond the "yes or no" question asked of him by Prisua's counsel on cross and testifying that Samsung had done a very thorough review ***in this case***. (*Id.* at 38.) Compounding the unfairness, Samsung's counsel then repeatedly made that claim in closing arguments, arguing to the jury exactly the type of testimony he had assured the Court would not come out. (ECF No. 319 at 51 ("Then when Samsung first learned of this issue, they did a thorough investigation of this issue and they determined that they did not infringe in any way on this patent."); *id.* at 67 ("They did a thorough analysis, and they said, We don't. We're not doing that.").) By presenting and exploiting that

evidence at trial, after having refused to produce it to Prisua in discovery, Samsung used privilege as sword and shield, while ensuring that it was too late for Prisua to obtain any discovery into the allegedly "very thorough" internal review.

Samsung's vexatious, incalcitrant and unscrupulous litigation tactics warrant an enhancement of damages under § 284.

### 5. The Case Was Not Close Once the Court Construed the Claims in Prisua's Favor, Yet Samsung Ignored Those Constructions

Whether a case was close is one of the many factors bearing on enhancement of damages. Once the Court construed the claims entirely in Prisua's favor, this case was not close. Samsung's litigation strategy thereafter was a façade that depended on ignoring the Court's claim constructions, especially with respect to the key claim terms "original video data stream" and "user input video data stream" — remarkable in view of the parties' prior stipulation that construction of those terms would be "case or claim dispositive." (ECF No. 40 at 2.)

Prior to trial, Samsung advanced various claim constructions that sought to introduce limitations to the claims that were not there, but the Court rejected those claim constructions and adopted all of Prisua's claim constructions. (ECF No. 103.) Those constructions were subsequently incorporated into both the preliminary and final jury instructions:

| TERM | DEFINITION |
|---|---|
| "Extracting" | "To select and separate out" |
| "Performing a substitution" | This term is assigned its plain meaning. |
| "Original video data stream" | "A digitally recorded sequence of image frames that is to be modified" |
| "User input video data stream" | "A sequence of image frames digitally recorded by a user separate from the original video data stream" |
| "Spatially matching" | "Aligning a set of pixels in the spatial domain" |
| "Extracting the at least one pixel from the user entering data in the data entry display device" | "Selecting and separating out the at least one pixel chosen by a user on a display, when said display is acting as a data entry device and receives a selection of at least one pixel by said user" |
| "Extracting the at least one pixel from the user pointing to a special location in a displayed video frame" | "Performing spatial analysis on a video frame based on a user input, then selecting and separating out the at least one pixel chosen by said user" |

(ECF No. 280-1 at 23; ECF No. 323 at 11.)

Yet Samsung conducted the trial as if the Court's claim constructions did not exist. Samsung's expert, Dr. Edward Delp ("Dr. Delp"), went through his entire direct testimony without even once mentioning the Court's actual claim constructions of the "video data stream" terms which governed the infringement analysis for the jury. In fact, Dr. Delp admitted that his direct testimony did not include *any reference whatsoever* to the Court's actual definitions of the "video data stream" terms. (ECF No. 310 at 127:9-18, 128:9-18.) Indeed, the trial testimony of Dr. Delp, Samsung's only technical expert, never denied that the images taken by the accused devices and edited by the Best Face feature were digitally recorded sequences of image frames, which is all that was required under the Court's construction of the "video data stream" terms. Instead, Dr. Delp insisted over and over again that the images were not, in his opinion, "videos," as if the Court's constructions of the actual claim terms were not binding. On cross, Dr. Delp ultimately conceded that the term "a video" was not even a claim term in the '591 Patent; instead, the claims terms concern "video data streams." (*Id*. at 155:14-21.) And with respect to that, Dr. Delp

13

conceded that a single still image constitutes a video image (*id*. at 130:6-1), and he further admitted:

> Q. Video data streams consist of single still images, correct?
>
> A. Yes.

(Id. at 138:19-21.).

Samsung's conduct thus once again mirrored the conduct held in *SRI* to warrant enhancement. *SRI*, 254 F. Supp. 3d at 722 (stating that Cisco pursued defenses at trial "that were contrary to the court's rulings" on claim construction; specifically, that "[a]lthough the court had explained that '[t]he claim language and the parties' constructions do not require that the network monitor and hierarchical monitor be separate structures,' Cisco maintained throughout trial that separate monitors were required" (alterations in original) (record citation and internal quotation marks omitted)). An evaluation of whether the case was close cannot be viewed through the distorted lens of the artificial contest that Samsung ginned up. If Samsung had respected the Court's claim constructions instead of bucking them, the elaborate show Samsung put on would have been impossible.

### 6. Samsung's Size and Financial Condition Warrant Substantial Enhancement

An infringer's size and financial condition are considered both relative to the plaintiff and to ensure that enhanced damages would not unduly prejudice the defendant. *Canon, Inc. v. Color Imaging, Inc.*, --- F. Supp. 3d ---, No. 1:11-CV-3855-AT, 2018 WL 1045817, at *6 (N.D. Ga. Feb. 22, 2018). This factor is important because a company with practically unlimited resources may abuse the rights of others for the simple reason that the consequences are immaterial to its financial condition. *Cf.* Brian Burrough & John Helyar, *Barbarians At The Gate* 96 (1989) (quoting RJR/Nabisco chairman Ross Johnson's motto that, to a $25 billion company, "a few million dollars

14

are lost in the sands of time"). In addition, the relative powerlessness of an adversary with limited resources means that a company with practically unlimited resources can often engage in such abuse with impunity and use the disparity to frustrate justice. *Cf. Haines v. Liggett Group, Inc.*, 814 F. Supp. 414, 421 (D.N.J. 1993) (quoting cigarette manufacturer R.J. Reynolds internal memorandum stating "the way we won these cases was not by spending all of [RJR]'s money, but by making that other [_____] spend all of his") (first alteration in original).

The present case illustrates both of those realities on a grand scale. Samsung is one of the world's largest companies. According to its earnings release for 2017 (a true and correct copy of which is attached hereto as Exhibit B), its annual revenue was $222 billion (*id.* at 1) and its annual profit was $50 billion (*id.*).[3] Its market capitalization is $280 billion. Samsung Stock Quote, Bloomberg Markets, https://www.bloomberg.com/quote/SMSN:LI (last visited Mar. 1, 2018). It can behave the way it did toward Prisua, a one-person company with no revenue, because the consequences are immaterial to Samsung's financial condition. And so it did.

Equally, the aforementioned threat by Samsung to seek its attorney's fees from Prisua was a clear instance of a massive company flexing its financial muscle in an attempt to squelch the legitimate claim of a relatively weak and impecunious opponent. No doubt Samsung's attorney's fees in this case were far beyond the ability of Prisua to pay. Samsung's threat to seek attorney's fees was an act of raw intimidation.

The circumstances of this case call for an enhancement of the jury's damages award.

---

[3] The earnings in the release are stated in Korean currency (239.58 trillion in revenue and 53.65 trillion in profit), and have been converted to dollars here using the current exchange rate of 1,075.77 per dollar in accordance with economic data maintained by the Federal Reserve Bank of St. Louis. *See* South Korea / U.S. Foreign Exchange Rate, FRED Economic Research—Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/DEXKOUS (last visited Mar. 1, 2018).

### B. The Court Should At Least Double the Jury's Award in This Case

As reviewed above, district courts have exercised discretion under § 284 to award a wide range of enhanced damages up to the maximum permitted treble damages. In view of the numerous significant factors favoring an enhancement in this case, a substantial enhancement of at least double the damages found by the jury is warranted. A double damage award of $8.6 million would represent less than four one thousandths of one percent of Samsung's annual revenue.

## IV. CONCLUSION

The Court should exercise its discretion to enhance damages by at least doubling the jury's damage award.

Dated: March 1, 2018

Respectfully submitted,

By: */s/ John C. Carey*
John C. Carey (Florida Bar No. 78379)
David M. Levine (Florida Bar No. 84431)
Amy M. Bowers-Zamora (Florida Bar No. 105755)
**CAREY RODRIGUEZ MILIAN GONYA, LLP**
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone:   (305) 372-7474
Facsimile:   (305) 372-7475
Email:   jcarey@careyrodriguez.com
            dlevine@careyrodriguez.com
            abowers@careyrodriguez.com

*Attorneys for Plaintiff Prisua Engineering Corp.*

## CERTIFICATE OF PRE-FILING CONFERENCE

Pursuant to Local Rule 7.1(a)(3), counsel for Prisua certifies that he conferred with counsel for Samsung in a good faith effort to resolve by agreement the issues raised in this motion, but was unable to do so.

*/s/ John C. Carey*
John C. Carey

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 1, 2018, a true and correct copy of the foregoing document was served by the Notice of Electronic Filing and was electronically filed with the Clerk of the Court via the CM/ECF system, which generates a notice of the filing to all attorneys of record.

By: */s/ John C. Carey*
John C. Carey
